COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Alston and Senior Judge Coleman


SHERRY WRIGHT HARLOW

                                                        MEMORANDUM OPINION*
v.        Record No. 0060-09-2                                PER CURIAM
                                                            JUNE 23, 2009
LOUISA COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF LOUISA COUNTY
                          Timothy K. Sanner, Judge

            (Catherine A. Lowe, on brief), for  appellant.  Appellant submitting
            on brief.

            (Deborah Tinsley; Tristana Treadway, Guardian *ad litem* for the
            minor children, on brief), for appellee.  Appellee and Guardian *ad
            litem* submitting on brief.


        On December 8, 2008, the trial court terminated the residual parental rights of Sherry

Wright Harlow (appellant) to her sons A.H. and C.H.  The trial court found clear and convincing

evidence proved the circumstances required for termination pursuant to Code § 16.1-283(C)(2).

On appeal, appellant contends the evidence was insufficient to support the trial court's decision.

Finding no error, we affirm.

        Termination of residual parental rights pursuant to Code § 16.1-283(C)(2) requires proof

that the parent, "without good cause, ha[s] been unwilling or unable within a reasonable period

of time not to exceed twelve months from the date the child was placed in foster care to remedy

substantially the conditions which led to or required continuation of the child's foster care

placement," notwithstanding reasonable and appropriate efforts of service agencies.

─────────────────────
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

A.H. was born on August 7, 2005, and C.H. was born on June 25, 2006. The children lived with appellant and their father, Mark Harlow (Harlow), and appellant's two other children.[1]

The Louisa County Department of Social Services (LCDSS) became involved with the family in July 2006. The police had found both appellant and Harlow intoxicated in the presence of the children and arrested them for domestic assault and battery. LCDSS performed a family assessment for physical neglect due to domestic violence in the home. LCDSS referred appellant for evaluation and treatment of substance abuse, counseling for domestic violence issues, and parenting classes. Appellant did not participate in any of the programs she was offered.

---

[1] Harlow was deceased at the time of appellant's 2008 termination hearing.

On January 25, 2007, LCDSS performed another family assessment for physical neglect in the home resulting from domestic violence. The police had again found appellant and Harlow intoxicated and observed marks and blood on appellant. Harlow was arrested as a result of the incident. Both parents were offered parenting classes, substance abuse evaluation, and counseling for domestic violence. Neither parent participated in any of the recommended programs.

On February 5, 2007, LCDSS conducted a third family assessment for physical neglect due to continued exposure of the children to domestic violence and substance abuse. Appellant and Harlow signed an agreement with LCDSS and were offered services for parenting, substance abuse counseling, and domestic violence counseling, but neither of them followed through with the programs.

Preliminary child protective orders were entered for both children on February 16, 2007. The orders prohibited the parents from engaging in domestic violence or corporal punishment and from using drugs or alcohol. Additionally, the orders stated the parents were not to leave the children unsupervised.

Appellant and Harlow signed a Family Service Agreement in March 2007. The parents agreed to seek substance abuse evaluations, parenting education, and domestic violence counseling. Appellant attended substance abuse counseling, but made no further efforts to complete the requirements of the agreement.

During a March 2007 investigation by Child Protective Services (CPS) of a skull fracture C.H. had sustained, appellant admitted she had ridden on a "four wheeler" with the child, then four months old, wearing an adult sized helmet. C.H. had been strapped to appellant's chest, and she could feel his head bounding back and forth. The investigation resulted in a finding of physical neglect against appellant.

Following further reported incidents of violence in the home, A.H. and C.H. were removed from the home and placed in foster care May 21, 2007. In one of the incidents, appellant and Harlow, both of whom were intoxicated, fled the scene before the police arrived, leaving A.H. and C.H. without adult supervision.

The foster care service plan, with a goal of returning the children to their home, required appellant to complete family treatment court, a parenting psychological assessment, parenting education, and domestic violence counseling, as well as cooperate with all treatment recommendations. Appellant completed a psychological assessment, but she did not comply with any of the treatment recommendations she received. Nor did appellant complete any of the classes or services required by the plan.

After the children's removal from the home, appellant had intermittent supervised visitation with them. However, appellant occasionally tested positively for drugs when she arrived for visitation sessions, and she was not permitted to see the children on those instances. In addition, appellant also arrived late to her visitation sessions. Appellant's visitation with the children was terminated in September 2007 because she was not complying with the requirements of the foster care service plan and she continued to be charged with criminal offenses.[2]

Appellant was incarcerated beginning in February 2008 upon a charge of malicious wounding of Harlow. During a brief release from jail on bond in April 2008, appellant was arrested for shoplifting.

LCDSS filed a permanency plan with the goal of adoption for both children on June 2, 2008. Based upon appellant's representations in court that she would be released from jail

---

[2] In May 2007, appellant was convicted of two counts of domestic assault and battery against Harlow, two counts of violating a protective order regarding Harlow, and trespassing. She was found guilty in June 2008 of driving while intoxicated.

within a week, all criminal charges against her were going to be dropped, and she had a suitable place to live, the juvenile and domestic relations district court (juvenile court) disapproved the plan. However, when appellant's representations proved untrue, the juvenile court, on June 27, 2008 disapproved the plan filed by LCDSS with the goal of returning home. Then, on July 7, 2008, the juvenile court approved a permanency plan with the goal of adoption and granted the petition of LCDSS to terminate appellant's parental rights to A.H. and C.H.

Appellant was released from incarceration in October 2008 following her conviction of committing unlawful wounding upon Harlow. She had no permanent home, did not work, and was subsisting on workers' compensation disability payments.

The termination hearing in the trial court occurred in December 2008. At that time, A.H. and C.H. were living with the foster family they had joined after their removal from the home in May 2007. The foster family desires to adopt them.

Appellant presented evidence at the termination hearing that following her release from jail she initiated contact with LCDSS to complete the programs and services set forth in the foster care service plan. Appellant was on probation, and had appeared for two scheduled meetings with her probation officer. Appellant tested negatively for illegal drugs at the meetings with her probation officer. Appellant had been in substance abuse counseling since her release from incarceration. Appellant was living at the home of a friend, and would be permitted to stay there until February 2009. Appellant claimed she would be able to resume care of A.H. and C.H. within three to six months.

On appeal, appellant argues the trial court wrongfully terminated her parental rights because, as of the termination hearing, she had substantially remedied the conditions that led to the removal of her children. In the two months since her release from incarceration, she

contends, she has complied with treatment for substance abuse, has a stable place to live, and has made strides toward the completion of the requirements of the foster care service plan.

However, despite appellant's recent progress in areas relating to her ability to parent A.H. and C.H. successfully, the evidence nonetheless proved that for twelve months following the children's removal in May 2007, appellant did virtually nothing to remedy the circumstances of neglect, domestic violence, and substance abuse prevalent in the home. From July 2006, when A.H. and C.H. were, respectively, one year and one month old, appellant and Harlow had a history of consistent contacts with the police, LCDSS, and CPS. After the children's removal, appellant did not take advantage of the offered services that would have improved her family's situation. Appellant's privilege of visiting the children had to be terminated because she did not appear for the sessions consistently and while drug free. There was no evidence that while incarcerated in 2008 appellant sought out any programs which might have advanced her toward the goal of reunification with the children. Indeed, when appellant was released briefly from incarceration, she used that opportunity to commit another crime, rather than improve her relationship with her family.

Although appellant claims she will be able to provide a suitable home for A.H. and C.H. and support them within three to six months, she provided the trial court with no evidence of permanent plans with regard to their care. In this regard, appellant's "'past actions . . . over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child

or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

At the time of the termination hearing, A.H. was three years old, and C.H. was two. They had had no contact with appellant for fourteen months. They are thriving in the care of a foster family, with whom they have lived since May 2007. The foster family desires to adopt the boys.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that clear and convincing evidence proved the best interests of A.H. and C.H. would be served by terminating appellant's parental rights pursuant to Code § 16.1-283(C)(2). Accordingly, the trial court's decision is affirmed.

Affirmed.